IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAR 2 1 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

JENNIFER FARFARAS,

    Plaintiff,

v.

CITIZENS BANK & TRUST CO. OF
CHICAGO, et al.,

    Defendants.

Case No. 01 C 8720

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Farfaras sued Defendants for battery (Count I), intentional infliction of emotional distress ("IIED")(Count II), assault (Count III), sexual harassment (Count IV), and sexual discrimination (Count V). Following a four-day jury trial in this Court, the jury found Citizens Bank & Trust (the "Bank") liable on Count IV, Robert Michael liable on Counts II through IV, George Michael liable on Counts I through IV, and Nicholas Tanglis liable on Counts II and III.

For Counts I through III, the jury awarded Plaintiff a total of $300,000: $100,000 for emotional distress, loss of dignity, or humiliation; $100,000 for pain and suffering; and $100,000 in punitive damages. Defendants contest the amount of the award, and Plaintiff asserts that the $300,000 verdict should be against each Defendant individually, totaling $900,000.

For Count IV, the jury awarded Plaintiff $200,000 in compensatory damages for humiliation, emotional distress, and loss

of reputation and dignity. Plaintiff also received $9,314.48 in lost wages. Pursuant to 42 U.S.C. § 1981(b)(3)(a), the Court reduced the award to $50,000, and on Defendants' motion, reduced the lost wages to $6,752.90.

Before the Court are Defendants' Motion for a New Trial or Remittitur of Damages (the "Defendants' Motion"), and Plaintiff's Motion to Alter or Amend the Judgment, for Judgment as a Matter of Law, or Alternatively for a New Trial (the "Plaintiff's Motion"). Plaintiff also seeks attorneys' fees and costs, which the Court will address separately at a later date.

## I. **DEFENDANTS' MOTION**

Defendants argue that they are entitled to a new trial because the Court: (1) allowed prejudicial testimony; (2) ignored a prior motion *in limine* ruling; and (3) re-instructed jurors improperly. Defendants also seek a new trial on the issue of damages, or remittitur of the compensatory and punitive damages as excessive.

To grant a new trial, the verdict must be against the weight of the evidence, damages must be excessive, or, for other reasons, the trial must not have been fair to the moving party. *See General Foam Fabricators, Inc. v. Tenneco Chem., Inc.*, 695 F.2d 281, 288 (7th Cir. 1982). If damages are excessive, the proper remedy is remittitur, not a new trial unless a plaintiff refuses to accept. *See Davis v. Consolidated Rail Corp.* 788 F.2d 1260, 1263 (7th Cir. 1986). Witness credibility is crucial in discrimination cases, and

courts will "overturn a jury verdict for the Plaintiff only if . . . 'no rational jury could have found for the plaintiff.'" *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1043 (7th Cir. 2000)(citation omitted). For the following reasons, Defendants' Motion is denied.

### A. Alleged Prejudicial Testimony

Evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." FED. R. EVID. 401. During the trial, Plaintiff testified at length about disparaging and pejorative statements that Defendants made to her, including comments Robert Michael said about Greek and Jewish people. Defendants specifically object to the following:

> A.    . . . the first time he saw me he said that he knew that I would be trouble for him but he didn't care because . . . And after he concluded with that statement, he would begin to tell me that I was the most beautiful Greek girl he had ever seen and that normally Greek women are not beautiful, they look like Greek men, and he asked me why I'm proud of being Greek, there's really nothing to be proud of.
>
> . . . .
>
> A.    . . . 'Why are Greeks so proud of Greek Town? It's just a bunch of little restaurants.' He said, 'Now, the Magnificent Mile, now, the Jews have something to be proud of.'
>
> . . . .

A. After that he would tell me again about being the most beautiful Greek woman that he's ever met . . . and he proceeded to tell me that he knew that I liked him because he could see it in my eyes and that he just wanted to let me know that he liked me too. And he told me that we needed to get to know each other better, and we would do that when I was ready, and I needed to approach him and ask him to get to know each other better . . . And then he told me that he had a boat . . .

. . . .

A. . . . and I should consider spending the weekend on his boat having sex under the stars . . .

(Tr. Trans. 88-90).

Defendants argue that these ethnic statements were irrelevant and prejudicial, and accordingly seek a new trial as to all Defendants. Plaintiff responds that the references regarding "plaintiff's national origin were made in reference to plaintiff's sex; to-wit: a Greek woman and was not prejudicial as there were numerous reference to plaintiff's national original though the testimony of [others, including] Bank President Tanglis. . . ." (Pl. Repl. at 3).

Here, the Court concludes that these statements were related to Michael's derogatory sexual comments -- he spoke of Plaintiff being a beautiful Greek woman and wanting to have sex with her on his boat. Accordingly, such comments were relevant to Plaintiff's sexual harassment claim and properly admitted.

Further, even if the Court improperly allowed such testimony, it was not a harmful error. "A harmful error results only if the error had a 'substantial and injurious effect or influence' on the jury's verdict." *United States v. Hanson*, 994 F.2d 403, 407 (7th Cir. 1993)(citation omitted). Here, the four-day trial was replete with testimony regarding Defendants' offensive sexual statements and actions unrelated to the ethnic statements. For example, Plaintiff testified as follows: Defendants said "Good morning, Jennifer. Why don't you come over to my office and sit on my face." (Tr. Trans. at 70); "he would tell me that he wanted to lick me and he wanted to lick me like an ice cream cone, he wanted to lick me like a birthday cake. He told me that he wanted to have sex with me." (*Id.*); "he would sit there and look at me, and he would make these grunting, mumbling, sucking noises" (*Id.* at 74); "he would put his hand on my butt . . . or he would put his hand on my leg, and he would run it up my leg to lift my skirt" (*Id.*); "he pin[ned] me up against the wall, and he proceeded to kiss me" (*Id.* at 77); and "he would put his hand on my shoulder, my right knee and my right shoulder, and rub it." (*Id.* at 64).

The determination of guilt is "commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of evidence, [and] instruction of jury by the judge." See *McCormick v. United States*, 500 U.S. 257, 288 (1991). Here, Plaintiff presented substantial evidence regarding Defendants'

offensive actions independent of the contested testimony. The jury had sufficient evidence in which to base their verdict on Plaintiff's claims. *See Williams v. Pharmacia*, Inc., 137 F.3d 944, 951 (7th Cir. 1998)(finding harmless error when "there was sufficient evidence independent of the [improperly admitted] testimony upon which the jury could rely in finding [Defendant] liable for sex discrimination."). The Court concludes that this testimony would not have substantially affected the jury's ultimate decision, and does not warrant a new trial.

### B. Motion *in Limine*

Defendants also argue that the Court erred by allowing testimony prohibited by Defendants' first motion *in limine*, which precluded lay witness testimony relating to Plaintiff's medical, emotional, or psychological conditions. Yonia Yonan, Plaintiff's friend, testified that Plaintiff -- based on her personal opinion -- was depressed and acting differently beginning in 2000. Plaintiff responds that the testimony now objected to was elicited by Defendants when seeking her personal observations of Plaintiff's demeanor. Plaintiff argues:

> Defendants therefore have waived any post trial arguments by asking the very questions at trial that led to answers given by Ms. Yonan of which they now complain. Ms. Yonan did not testify to any medical diagnosis of the plaintiff on direct examination nor do defendants complain about any answer given by Ms. Yonan to plaintiff's attorney. Significantly, Ms. Yonan's testimony . . . was

> elicited by defendants themselves on cross examination!

(Pl. Resp. Br. at 4).

The Court agrees with Plaintiff. Yonan said she thought Plaintiff was depressed in response to cross-examination questions posed by <u>Defendants' counsel</u>. (Tr. at 303-09). Defendants cannot now, in good faith, seek a new trial on the grounds that this testimony was improperly admitted when they themselves asked the questions on cross-examination that elicited the testimony. The Court additionally notes that a motion *in limine* ruling is not absolute and can be altered by the Court as the case unfolds. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984).

Further, even if erroneously admitted, Yonan's lay testimony concerning her friend's emotional state does not warrant a new trial. Plaintiff submitted sufficient testimony independent of these comments for the jury to properly determine whether the Defendants sexually harassed Plaintiff. *See Williams,* 137 F.3d at 951. Plaintiff herself testified that as a result of the Defendants' actions, she gained weight, lost sleep, felt humiliated, and become depressed and withdrawn from her family. A new trial is not warranted on this basis.

### C. Re-instruction of Jurors

Finally, Defendants argue that the Court erroneously re-instructed the jury that it "must" impose punitive damages. This argument has no merit and can be easily dismissed. The jury sent

a note to the Court stating: "Please give us a definition of Punitive Damages." The Judge responded to the jury with a note reading: "See attached instruction," and re-tendered the original instruction on punitive damages to the jury. Despite Defendants' contentions, any conversation regarding a new definition of punitive damages was solely between counsel and the Court, and not in the presence of the jury. The record clearly reflects that the Court did not write down or provide a new definition of punitive damages to the jury -- it merely referred them to the original instruction. As a result, there was no erroneous re-instruction, and no grounds for a new trial.

### D. Remittitur of Compensatory Damages

The Seventh Amendment requires substantial deference to the jury's calculation of compensatory damages, but "the court must also ensure that the award is supported by competent evidence." *Ramsey v. Am. Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985). When reviewing a compensatory damages award, the Court makes three inquiries: "whether the award is 'monstrously excessive'; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas, and whether the award is roughly comparable to awards made in similar cases." *U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995).

Defendants argue that the $200,000 compensatory award is excessive and not supported by the evidence presented. Defendants argue that Plaintiff introduced sparse evidence relating to her problems from the alleged battery, assault, and emotional distress claims. Beata Blaszczyk, Plaintiff's friend, testified that she and Plaintiff went out to dinner as often as four nights a week, but Plaintiff never mentioned that she had been sexually harassed. (Ex. C at 45-47). Additionally, Plaintiff did not contact any medical professionals regarding her alleged conditions and her mother stated that "[s]he's not suffering over anything to go to a doctor." (Tr. Trans. at 118, 338).

After a review of the record, the Court concludes that $200,000 is not "monstrously excessive" and is rationally related to the evidence presented. This is not a case of an isolated comment or action. Plaintiff testified that Defendants, who each held positions of power in the Bank, physically and verbally harassed her on *repeated* occasions. Plaintiff testified that her personality and demeanor changed: she gained weight, she had sleepless nights, and she withdrew from family and friends. Although Plaintiff did not seek medical assistance for her depression, "[i]t is well-settled that Title VII plaintiffs can prove emotional injury by testimony without medical support." *David v. Caterpillar, Inc.*, 185 F.Supp.2d 918, 923 (C.D. Ill. 2002). The jury had substantial evidence to base its verdict on

and the award does not appear to be a "product of the jury's fevered imaginings or personal vendetta." *U.S. EEOC*, 55 F.3d at 1285.

The Court next addresses Defendants' contention that the $200,000 award is higher than is typical for "emotional distress" cases. Here, the Court notes that the compensatory damages were not only for emotional distress, but also for loss of dignity, humiliation, and pain and suffering for assault, battery, and IIED. While the average damages "awards range[] from a low of $500 to a high of over $50,000" for embarrassment, humiliation, emotional distress in the Seventh Circuit, see *Webb v. City of Chester*, 813 F.2d 824, 837 (7th Cir. 1987), awards of $200,000 and greater have been permitted when warranted. *See, e.g., Neal v. Honeywell, Inc.*, 191 F.3d 827 (7th Cir. 1999)($200,000 for emotional distress); *Spina v. Forest Pres. Dist.*, 207 F. Supp. 2d 764, 773 (N.D. Ill. 2002)($300,000 in compensatory damages); *Naeem v. McKesson Drub Co. Inc.*, No. 95-5425, 2002 WL 975315 (N.D. Ill. May 1, 2002)($240,000 pain and suffering). Defendants have failed to show that $200,000 for emotional distress, loss of dignity, humiliation, and pain and suffering is out of line with other cases with allegations of repeated physical and verbal harassment by multiple individuals who are in positions of power.

Accordingly, the motion for a new trial on the issue of damages or remittitur of compensatory damages is denied.

## E. Remittitur of Punitive Damages

Defendants also argue that the evidentiary record and severity of Defendants' actions do not support the punitive damages award of $100,000. Plaintiff argues that the Defendants deliberately acted above the law, and used their substantial wealth and authoritative positions to degrade, abuse and prey on young women.

The Court considers "three guideposts to determine whether a punitive damage award is grossly excessive such that it offends due process: (1) the degree of reprehensibility of defendant's conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and his punitive damages award; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004)(citing *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

Defendants' conduct in this case was reprehensible. There was evidence of constant touching, staring, sexually explicit comments, and sexual advances. *See BMW*, 517 U.S. at 576-77 ("[E]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law."). Defendants each held positions of power in the Bank and used their authority to subject Plaintiff to continuous harassment. Further, no large disparity

exists between the compensatory and punitive damages awarded here. Finally, the $100,000 award comports with other Seventh Circuit case precedent. See, e.g., U.S. EEOC, 55 F.3d at 1287 ($150,000 punitive damage award upheld in disability discrimination claim); Williamson v. Handy Button Mach., 817 F.2d 1290, 1296 (7th Cir. 1987)($100,000 punitive damage award upheld in race discrimination suit). The jury's punitive damages award here does not exceed what is suitable and necessary to punish and deter Defendants from engaging in similar behavior in the future. See U.S. EEOC, 55 F.3d at 1287. Defendants' Motion for a new trial on punitive damages or for remittitur is denied.

## II. **PLAINTIFF'S MOTION**

Plaintiff contends the Court erred by not entering the judgment on Counts I through III against each Defendant individually, and by reducing her lost wages.

### A. Judgment on Counts I through III

Plaintiff contends that the Court should have entered the judgment on Counts I through III as separate judgments against each Defendant, totaling $900,000. This argument lacks merit. The jury verdict form itself demonstrates that jury intended to render a collective award of $300,000, not separate awards of $300,000. It expressly states: "If the jury finds in favor of the Plaintiff and against *at least one* Defendant in Count I, II, or III, then indicate below the jury's determination as to the Plaintiff's

recoverable damages in each of the listed categories." (Emphasis added). The categories are: (1) emotional distress, loss of dignity or humiliation; (2) pain and suffering; and (3) punitive damages. Thus, the verdict form asked for a collective appraisal of the *total* that Plaintiff should receive in the three separate categories, and the jury accordingly awarded $100,000 per category, for a total of $300,000. Accordingly, Plaintiff's Motion is denied.

### B. Lost Wages

At trial, Plaintiff testified that she had $9,314.48 in lost wages. In a post-trial hearing, Defendants argued that the Court should reduce Plaintiff's lost wages because Plaintiff testified at trial that she pushed back her start date at her new job for three weeks. As a result, the Court reduced Plaintiff's lost wages.

In her Motion, Plaintiff contends that the Court erred by reducing her lost wages from $9,314.48 to $6,752.90. Plaintiff argues that Defendants improperly orally raised the reduction in back pay as an issue for the first time post-trial. Therefore, Defendants waived their right to assert the affirmative defense of mitigation of damages. Defendants respond that the reduction in back pay damages was not due to a failure to mitigate damages, but rather to Plaintiff's failure to establish that the Defendants' conduct proximately caused all of her claimed lost wages.

Plaintiff is correct. An employee who seeks "lost wages for the period of discrimination has the initial burden of establishing the amount of damages. Once the amount sustained as damages had been established, the burden shifts to the employer to prove, as an affirmative defense, that the employee failed to mitigate those damages." *Fleming v. County of Kane*, 898 F.2d 553, 560 (7th Cir. 1990). During the trial, Plaintiff established the amount of lost wages as $9,314.48. Defendants did not prove, or even raise the issue, of the failure to mitigate damages at trial. Thus, Defendants have waived their right to assert it now. *See* FED. R. CIV. P. 8(c). Accordingly, Plaintiff's Motion is granted as to the lost wages, and the Court reinstates Plaintiff's lost wages in the amount of $9,314.48.

### III. CONCLUSION

For the reasons stated herein, the Defendants' Motion is **DENIED**. Plaintiff's Motion is **GRANTED** with respect to the reduction in lost wages, and **DENIED** as individuality of the judgment on Counts I through III. As a result, the total monetary judgment in favor of Plaintiff is $359,314.48.

**IT IS SO ORDERED.**

Dated: March 2, 2005

Harry D. Leinenweber, Judge
United States District Court